21-2044, United States v. Stevens, Mr. Auerbach and Ms. McKeon. For once in my life, I hope I pronounced that semi-correctly. That's good, Your Honor. Boy, it's better to be lucky than good some days. Good afternoon, Your Honor. Dan Auerbach for Appellant Abid Stevens. I'd ask to reserve three minutes for a rebuttal. You sure can. Thank you. Your Honors, we would ask this Court to not overturn Nedley. As we see it, Nedley is consistent with Supreme Court precedent. It's consistent with the case law of the 10th, 7th, and D.C. circuits. The only contrary decision is that of the 11th circuit in the Thomas case, which failed to consider the critical interpretive principle. But don't you have... To me, there's a tension between the specific intent of our decision in Nedley with respect to the Hobbs Act. I think you got the 1st, the 9th, and the 11th circuits using general intent, so you can see where there's a tension. It looks like there may be a trend away from where our Court was 65 years ago. So, Your Honor, I think any decision to that end would not be correct for a variety of reasons, and I'll start with the first one, and I think the critical one is the doctrine of imputation of common law meaning. So the Supreme Court is clear that when Congress uses the word robbery or other terms that had meaning in common law, that meaning is imported into the statute. All right, let's look at these statutes. The statute that Carter's dealing with in 2113 has... It uses robbery in the title of the statute, but it doesn't use robbery or larceny in the body of the statute. Correct, Your Honor. And when we get to Carter, Carter says, okay, robbery is just in the title, but then it's got a footnote, and the footnote said... Which footnote is this, Your Honor? There's a... You know, footnote 5 appears to be on page 267. Congress could have simply just punished robbery or larceny and left it undefined, and thus deferred to the common law, but instead it followed the more prevalent legislative practice of spelling out elements of these crimes. Now which of those two does our statute in 1951 fall into? It looks to me like 1951b1 spells out the elements. It doesn't just say, go look to Blackstone for what robbery is. So Your Honor, I think... I have a couple of responses. So I think what the Supreme Court does is exactly what this court did in Nettley. The Supreme Court, when you define a term, and the case we're relying on for this is Evans and some other cases, but what the Supreme Court will do is they'll say, okay, this is a term that had meaning in common law. Let's start with the common law. And then they say, okay, is there some issue with the definition that shows an inconsistency with the common law? Isn't that the other way around? Shouldn't we start with the text and then say, is there something that's... And the common law in that case may help you, it may not, but why get there? So I think literally speaking, the Supreme Court cases I've read in preparation for this argument, just literally start with the common law just as a matter of fact. If you're saying, is that the right conceptual approach? I would say, yes, it is. And the reason I would say that is this is a very specific doctrine. This is not a traditional use of legislative history. But they also always say absent contrary indication, right? Or some version of that. And when you have contrary indication in a definition that's laid out in the text with elements that seem to match up essentially one for one with the definition of robbery under the Hobbs Act, why don't we simply have an unambiguous general intent? Well, because that's not the analysis the Supreme Court does. And I want to be clear, I'm not trying to run away from the text. I listed a variety of reasons, so I want to get to text at some point. But on this point of imputation of common law meaning, that that's not how the Supreme Court performs the analysis. When you look to the Evans case, that deals with extortion in the Hobbs Act, the same section, and that that's a defined term. And then they say, we're going to follow the common law where the appellant wanted to go below common law. But it's not extortion writ large, right? I mean, Evans is bringing common law meaning to the undefined terms under color of official right. No, respectfully, Your Honor, I disagree. Because they look to the definition of, quote, extortion in the Evans case at issue there. They talk about it. If you want to say it's dicta, I would understand that. But they explain that the interpretation of the use of the word, quote, extortion in the Hobbs Act, is a defined term. And that's what they found in Evans. That's what we're asking this Court to do. And in addition, I want to get to text. Well, if that were so, then it would be limited to official right, right? I mean, it's the text of the statute that covers both private parties and the government. So if you were going to say we just look at the common law, and that's what Evans is doing, that wouldn't account for what the holding actually is, which covers both types of parties. So, Your Honor, in Evans, the Supreme Court finds that there was a specific intent to broaden it in exactly that manner. That was specifically intended by Congress specifically. That's where we get into the legislative intent. So in this case, looking to the text. That's not on common law, right? I'm not sure I understand the question, but, Your Honor, it was stated in the law correctly, in that you rely on the common law absent a departure from it. And the Supreme Court in Evans says there was a departure. So the question in this case would be, is there a similar departure from the common law from any aspect of the statute? And the answer is no. And I want to turn to statutory text to explain that, because I think that's critical. So the definition of robbery under the Hobbs Act is relevant here. I'll skip the irrelevant parts. The unlawful taking or obtaining of personal property. So if you're looking to the text, what does taking or obtaining mean? And when you read Nedley, Nedley did the analysis the right way and the way the Supreme Court does it, is they said, okay, let's start with the New York statute, because it was modeled on that. And the New York statute, as this Court explained in Nedley, uses the words taking and obtaining interchangeably to mean precisely what we're saying. In subsequent Supreme Court cases, if I took a moment I could read off the citation, but they are clear that obtaining has a requirement that you permanently deprive the victim of property, which is the issue here. And then the only issue is, does taking change the analysis? You have to hang your entire textual analysis on the word taking and saying the addition of that word matters. And that would not work. Why should we, when the Supreme Court has told us in 2113 that taking and obtaining, those same terms being used in the statute, gives rise to a general intent offense, why does the use of those same terms in the Hobbs Act become a specific intent offense? Your Honor, because in that case there was no use of a common law word that triggered the doctrine of imputation of common law meaning. They did not use robbery or extortion in the statute. In the Supreme Court's case law, it is abundantly clear that those terms had common law meaning. When you look at Carter, it says squarely, robbery specifically is a term that had meaning at common law. And this is the common law meaning, but no one has suggested that the common law didn't require this intent element that we're asking for. So the reason that you have a contrary decision in Carter is that they did not use the word that triggered the imputation doctrine. Okay. So we do have this issue about, okay, there's number one, what does Nedley mean as law now? And number two, if we or the Supreme Court were to address the statute anew, how would we go about it? If the Supreme Court was doing this in 2023, it would not be starting with the legislative history to decide that this was based on some New York statute. It would start with the text. Maybe, but I respectfully disagree, Your Honor, because I think this imputation of common law meaning doctrine, when you look at the cases, is a very unique context for how the Supreme Court does the analysis. And it is the starting point, unlike in other circumstances. I'll give you an example of how far things have come. Let's go to 1971. I think there was a case called Volpe versus Massachusetts Turnpike Authority. And the Supreme Court says, we can't figure out what the statute means by the legislative history, so I guess, we guess we're going to have to look at the text. That is 180 degrees different from the way things are done today. You look at the text first, and legislative history, according to some, is not even looked at because you have to look at what actually comes out of Congress. Others say, okay, well, you look at certain types of committee, joint committee reports, et cetera, but other things. There's a priority of legislative history, but life has changed dramatically. So now we're at 2023 versus 1958, in this case, and you're telling me that you think the Supreme Court would look at legislative history in connection with this particular Hobbs Act statute more so than the statute itself? So, two things. It's not legislative history squarely. It's the use in the text of the word robbery. This is a critical canon of statutory interpretation of extreme power when you read the cases. Second, we are not trying to run away from the text. I do not want to give the impression that I am concerned that if you ignored the imputation of common law, meaning that we would be wrong. We would still be right because the text of this statute makes clear that this is a requirement because that was how these terms were used at the time. We have to look to what they meant at the time it was enacted, not today, and that's what they meant at the time. Let's count up circuits. Ours is the only circuit that takes the specific intent position, right? I disagree. Okay. What other circuit can you cite? What other case can you cite that reads a specific intent to permanently deprive into or out of, depending on your perspective, the Hobbs Act definition of robbery? So, Your Honor, I cited a case called Melgar Cabrera in my brief. I erroneously attributed it to the Third Circuit. I apologize for that mistake. The Melgar Cabrera was a Tenth Circuit case. And so in discussing the general elements of robbery, it says, while Mr. Melgar Cabrera is correct in his assertion that Hobbs Act robbery is defined as common law robbery that affects interstate commerce, dot, dot, dot, not relevant to us, and in support of that proposition, the Melgar Cabrera court cites not only Nedley, but also United States v. Peterson from the Seventh Circuit, 236 Federal Reporter 3rd, 848, which they explained was abrogated by Taylor on other grounds. And also United States v. Harrington from the D.C. Circuit, 108 F. 3rd, 1460. Okay, you said while, so it sounds as if that was not actually part of the holding. It was an argument that was raised and conceded, but ultimately didn't matter in that case. I would agree that comment is dictative of the rest of the sentence. Is there any case where this is the holding or an essential part of the reasoning? That it specifically says that the specific intent. Yeah, where someone's conviction gets overturned because of specific intent, or we remand with instructions, do you give them a trial, or you instruct them on specific intent, or something like that? I did not find one, and, Your Honor, I wish I had more time to prepare. And how many circuits do you count up on the other side? I counted the 11th Circuit. Just the 11th. Okay. I want to hear the government's count on circuits here. I have to be forthright. I did not do an all-circuit search. I wish I had time to do that. I've had a very busy last little while. But I, so I cannot, I'm not making an assertion that that is, in fact, the only circuit. Okay. But the 11th Circuit is clearly against you. Yes. All right. So, but I think when we come back to this, the text of this statute, you have to look at it from what it meant at the time it was enacted. They are copying the New York statute. The New York statute was, had extensive case law that this Court cites in Nedley that says, here's exactly what those words meant. What is a taking or an obtaining? And if you're going to read the text to say it doesn't have a specific intent requirement, you have to go back and understand that the way the legislatures, or TORs, rather, did understand this provision. And the legislative history is replete with references saying we specifically mean common law robbery is understood in the New York statute. And that was in a history of case law. And if, you know, if modern legislators would have done it differently and specified a specific intent requirement in there, that's a modern practice. But that's not what they meant. That's not what those words were understood to mean. So even if you discard the imputation canon, we're still right. But you can't discard it. And when you look at the body of case law, all of these cases from the Supreme Court, say, in the extortion context, say, look at what New York did. It has the meaning of New York. You look to the common law meaning of robbery and extortion, because those were terms with meaning at common law. I don't understand the basis for this supposed inconsistency with Supreme Court precedent. The Nedley court did exactly the analysis that the Supreme Court does in all of these cases. They did not have the benefit of the formalization of it as the imputation of common law meaning canon. But they did the exact same analysis. It was completely right. It was exactly, exactly what we see the Supreme Court doing in Carter, in Evans, in all of these cases that you could look at. Where if you just look at any of the cases citing the Hobbs Act and looking at where they discussed common law meaning, that's what the Supreme Court has done. And there is no question to me that this court's decision in Nedley was right. There isn't a real issue here that I am seeing. Thank you. I'll let you hear from Ms. McKeon and get you back. Good afternoon, your honors. May it please the court. Bernadette McKeon for the government. The government has taken a closer look at the Supreme Court cases, the relevant Supreme Court cases. And it believes that Carter, as well as the other line of Supreme Court cases interpreting Hobbs Act extortion, do undermine the conclusion in Nedley. That Nedley includes a specific intent to steal, as well as an intent to permanently deprive the owner of their property. And primarily because the analytic framework for assessing an issue of statutory interpretation, such as that presented in the last over the years, it has been both refined and altered by the Supreme Court in a number of cases. In addition, as Carter demonstrates, the doctrine on imputing scienter has also significantly involved since the Morrissette decision. And the Morrissette decision was the only decision that the Nedley court in 1958 had the benefit of, but as Carter in a lengthy discussion of this issue makes clear that that doctrine has been refined over the years by the Supreme Court to disfavor the imputation of anything other than general intent, unless it is necessary to separate innocent conduct from wrongful conduct. And we believe that the Nedley decision falls on both grounds. It improperly, under today's standards, applied the imputation canon. If you start with the statutory test, remember Hobjack robbery is interference with commerce by robbery. The first paragraph states, anyone who in any degree obstructs, delays, interferes with interstate commerce by robbery or extortion. Then it defines those terms in the next two sections, a definition of robbery, a definition of extortion. That is far different than the footnote in Carter, which recognized that there are statutes, including federal statutes, that simply use the term robbery or extortion. And in that case, it is understandable that the courts would presume that their common law meaning was important. But here, as in Carter, the court chose to follow what Carter described as the more common legislative path of spelling out the elements of the offense. So what about the continued reference to common law interpretation of the term extortion? Well, I disagree with the assessment that my colleague here presented. If, starting with, there's a number of cases that interpret common law, interpret the extortion clause. In every single one of those cases, the court started with the statutory definition of extortion. And as Your Honor noted, it was broader than the common law definition of an extortion, because it included a private conduct, it incorporated private conduct. What the court did in Evans was look to the common law to define the common law term under color of official right. It stated those words mirror the definition in the common law. Therefore, we can look to that common law definition to see what that means. And the question was, did it require an affirmative act such as bribery? And the court said, the common law did. We are going to require that the under official color of right. The court didn't provide, I mean, Congress didn't provide a definition of that. If had they gone on and broken down that definition, then there would have been no reason to resort to the common law. Could we talk a little bit about the lay of the land here? How does the government count up the circuits that are directly opposed to Nedley? Circuits where maybe the reasoning or the holding or whatever is definitely on the other side. And then, is the government's view that our court needs to take Nedley en banc, or that this is already abrogated and does not require en banc rehearing? If I can start with the last question and work my way back. We believe that under this court's internal operating procedures, the court has a panel, has the authority not to follow an earlier decision if it conflicts with Supreme Court precedent. Subsequent Supreme Court precedent, the Tann case recognized it could even be prior Supreme Court precedent. Here, our position is that the Nedley imputation of these additional common law elements of specific intent and intent to permanently deprive conflicts with Supreme Court case law that has developed since then. And Carter does a good job of summarizing the principles that were in place at the time of the Carter decision in 2000, which is it talks about the limitations on the imputation of common law. And it makes it clear that you only apply that doctrine if there is a common law term used in the statutory definition. Now, this is very different from what you put in your supplemental memorandum to us. Yes, it is, Your Honor. And that it was, I mean, the court by raising the issue again made us take a much closer look at it and change our viewpoint on that. Well, and we were also with a five, yeah. Is this in consultation with criminal appellate, main justice? Yes, it is. I'd like to know how this fits because the government in briefing appeals in the First Circuit, the 9th and 11th, has said different things about what this means about. And I'd like to understand, is there a coordinated DOJ position? I can tell you right now that Mr. Zosmer and I conferred with the appellate chief of the criminal section in DOJ regarding our position in this case. Oh, my goodness. He's a former clerk. You can't call it with him. I know he is. But we did confer. We would not come in and take the position that precedent should be overruled or disregarded without making sure that this was, you know, okay with the powers that be. So we did take that step. And as far, to get back to your honors, and we do apologize for not fleshing this out sooner, but the court kept coming back to us and we kept taking a closer look. I mean, certainly it can be said that Carter does not directly abrogate or overrule Nedley. But it does, Carter in conjunction, the principles applied there, the analysis applied is what leads us to the conclusion that that aspect of Nedley is no longer good law. So back to Judge Bevis' question, is the better approach to take it in bank and deal with both sides of the issue with counsel getting more of a chance to brief it? Or say, as you now say, it looks like the lay of the land has changed dramatically over 65 years? Of course, that's ultimately the court's decision. We believe that it is clear enough that this panel has the authority to not follow Nedley. That aspect of Nedley's holding. But of course, that's, you know, your honors would know better than we would on that. But we believe it does satisfy the criteria. And I will tell you, there was a recent court, recent decision, 2018, the Carnes versus Shanahan, that talked about applying the internal operating procedure to disregard a prior precedent. And it used the, it really focused on a shift in the analytical framework. That case had not been directly overruled. But it said, there has been such a shift since that earlier decision that we do not feel compelled to follow that decision. And that's what's happened here. And Carter makes that clear, not only on the limitation of imputation of common law meaning. For example, in Nedley, the court was free to look to the common law to define take and obtain, as used in the definition of robbery. It started down that path, and then it just decided that all of the common law elements, including specific intent to steal, must have been intended to be incorporated into the statute. And the legislative history, to the extent that it should be consulted at all, did not really, did not support that view. It was, as noted in Colbert, for example, that's the one situation where the question was, do we impute an entirely different element into the statute? And the court said, no. I mean, the statutory language is plain. It's clear on this point. We do not do that. As opposed to Sekar in 2013, Shidler in 2003, the abortion clinic case, made it very clear that we are going to look to the common law to figure out, and New York law, which was consistent with common law, to figure out what the term obtain means in this context. Did they obtain the property of another? So that would be the proper use of the common law imputation doctrine. But when I look at your supplemental memorandum, you suggest that Hobbs-Achtemir use of the term, quote, robbery, close quote, shoehorns all the elements of common law robbery into the statute. And now what you're saying is diametrically different. It is, Your Honor, and I apologize for that. We're getting what trends there are. So why go from A to Z? What's the analysis to get you there? The analysis is a closer reading of Carter, and not for its specific holding, but for the principles enunciated in Carter, which did a good job of summing up the changed landscape up to that point, as well as the treatment of the imputation document in the extortion context, where not the Supreme Court never went beyond the terms, interpreting the terms that were in the statutory definition, to just say, okay, we're going to import another element that was in the common law, but doesn't appear in the statutory definition. And it's significant to me that Congress, when they enacted the Hobbs-Act robbery definition, the common law defined robbery as a feloniously and forcibly taking the property of another. Feloniously, as Carter recognized, means specific intent. They did not use that word in the Hobbs-Act robbery definition. So that is another reason why the court shouldn't import a specific intent requirement into the statute. So on your way to Damascus, you had an epiphany? Yes. Do you have a count on circuits? You know, Your Honor, I apologize. I did not grab my original brief, which did set forth the cases. But I can, there is not a single circuit court that has addressed the issue that has held that Hobbs-Act robbery requires anything other than general intent. And that is completely consistent with excitement video and with staples and with the discussion of Sienter and Carter. Carter made it very clear. Once you separate wrongful conduct from innocent conduct, you do not impute into a statute that's silent as to Sienter a higher or a specific intent requirement. And they explained why that was true in the bank robbery context. And that analysis applies with equal force to Hobbs-Act robbery, where as long as the person has the intent to commit the actus reus of the offense, the forcible taking of the property, that's sufficient to separate the person who doesn't realize that it's not their property or that it's wrong from the others. Your opening brief cited first, ninth, and eleventh, and a non-presidential from the second. So maybe on rebuttal, we'll hear from Ms. McCullough about that. And one other thing, there were, I believe it was the ninth circuit, who said, well, even if we assume that it did require a specific intent requirement or did impose a specific intent requirement, it was harmless. So they kind of, at least one or two circuits punted the issue without directly resolving it. But that's as close as we come to anyone delving into the specific intent requirement. In terms of, one other thing, and I, as, with respect to the intent to permanently deprive, that's even more troublesome because that does not appear to have been a common law requirement of robbery. The only thing cited in Nedley to support that proposition are a New York case that I read. It's an old case, and it involved a theft offense involving a promissory note. It did not involve a robbery offense. And then the Court cites the Cohen decision, which was a 1921 Third Circuit decision that involves a completely different statute that required not only taking, but taking, carrying away, and converting to one's own use. It makes sense that you would then read into that an intent to permanently deprive. But that wasn't, an intent to permanently deprive is not, is not mentioned in the common law that I could find. So that is even more far-field. It also requires another intent element, specific intent to permanently deprive. And we just don't believe that the current standards that are applicable in statutory interpretation support the conclusion reached by Nedley on those two issues. Your Honors, have anything further? Thank you. Mr. Obrek? I have to confess to being confused by the government's arguments, because I don't see how it lines up with any of the governing principles here. I'd like to read from Shidler v. National Organization for Women, which says there is a specific intent requirement for extortion. And I understand there isn't a case of the Supreme Court saying it also applies to robbery. But we already have that. It's a 2003 case, rather, that says we too, the Supreme Court, have recognized that the obtaining requirement of extortion under New York law entailed both the deprivation and acquisition of property. See United States v. Edmonds, noting that judicial construction of the New York statute demonstrated that extortion requires an intent to obtain that which injustice and equity the party is not entitled to receive. Most importantly, we have construed the extortion provision of the Hobbs Act at issue in these cases to require not only the deprivation, but also the acquisition of property. I don't know why there's any question about the specific intent requirement. The government is citing Carter to say, oh, you can't infer specific intent. But Carter gets there because it says the imputation canon doesn't apply whatsoever. So we're going to resort back to the traditional principles of statutory interpretation without regard to the common law. I have no idea what Carter has to do with this case whatsoever. It does not. It does not use the term with common law meaning. You don't get to the issues that are raised in this case. Any of the discussion of specific intent is completely irrelevant. I don't know what it's doing there. And then, Your Honor, you raised the first, Judge Bevis, the First and Ninth Circuit. The cases they cited from the First and Ninth Circuit have nothing to do with the elements of Hobbs Act robbery. Those are cases under 924C asking whether it's a crime of violence. They didn't ask any question about whether there is or is not a specific intent requirement. The only cases of which I'm aware that discuss it are Nedley and Thomas and then the dicta that I read to Your Honor earlier from Melgar Cabrera. So we have a one-to-one situation, as I read it, unless you look to dicta. And the Eleventh Circuit decision in Thomas is just wrong. They don't talk about any of the relevant interpretive principles. I didn't pull the briefs. I don't understand why they didn't talk about the imputation doctrine. But when you look at the Hobbs Act case law, Thomas is just wrong. This Court did what it was supposed to. I don't understand how we could draw any contrary conclusion in this matter. There was a discussion of a shift of analytic framework for when this Court can reverse. There wasn't a shift of analytic framework. I don't know what shift that supposedly was. This is the canon of imputation of meaning. It's been applied consistently for decades. There's no shift at all. And then the critical point under that canon is, is there an intended departure by Congress from the common law meaning? And what I was waiting to hear from the government was, okay, here is the text in the statute that evinces an intent to depart from the common law. Where are the words in this statute that says we don't want the common law meaning? And there are no such words. The government didn't try to tell us. It seems like this case comes down to, do we start with the common law, or do we start with the text of the statute? Your Honor, if you start with the text, we also would strongly contend that we are still correct. When you look to what these words mean, that's what they meant. This was a specific desire by the legislature to use those words to describe a common law robbery as understood in New York. Because the taking and obtaining language are the specific words that the New York legislature used, and there's a specific intent to incorporate them specifically. I don't think it matters which way you start. But regardless of which way you start... There clearly is an issue that's joined here. Otherwise, we wouldn't be here today. Your Honor, I don't see what the... I have to confess, I don't see this as a serious issue. I don't think this merits on-bond consideration. I don't think it should detain us. There's a ton of other issues in this appeal. This is not the one. You don't have to re-specifically affirm Nedley. You can assume it's right for the sake of argument. But this is not to me. I'm working, I'm struggling to understand... We have this issue. There's a real argument here. Maybe if it's error, is it even plain? You can't object the law. So the issue, I think, again, I raised this in the last argument, it's either Dobbs or Dobson. I always forget the name of the case. But the state of the law is the same. You got the case from Nedley, establishing it for decades. You got Walker reiterating it in 2021. Intervening cases I cited in that footnote in my brief. There's, I think, seven or eight or nine of them at minimum. I don't see how you can say it wasn't plain error here. The only way you get there is to say it should have been implicitly overruled by a Supreme Court president. But I don't see how anyone would... I don't see how you get there. So there's no question this was the law. We have to think about these issues. I understand it. It's important. But there isn't some reason that Nedley is in any serious dispute. So this case was the law. It remains the law. And there's no reason... In order for this to go en bloc, there should be some doubt that, OK, maybe this doesn't apply the current canon or the current interpretive principles. It does. The issue, I think, is bigger in one sense. One could make an argument on one side that if Hobbs Act robbery came from common law to New York law and then into federal law it would be at the Hobbs Act. That's one side. The other side is that when you look at the statutory, the words of 1951, you don't see anything in there that tells you that it would be specific intent. And so the argument has to be... The only way you can read specific intent is if somehow that's what Congress meant because they adopted, in effect, the New York statute, which, in effect, adopted the common law. Well, I respectfully disagree, Your Honor. You can disagree, but there clearly is an issue joined. I don't think you can't say that there is disagreement on that. There are two sides to this. The government's wrestling with it. You're wrestling with it. The government's changed its position from taking a strong position the other way. So I can't say that people are implausible because there is a topic that has caused discussion, reconsideration, and a changing of position. Well, I think the Justice Department's internal policies aren't evidence of what the law is. I still don't understand their argument. Even when you look at the text of the statute, what taking and obtaining means, we have to understand what the legislators meant. It means exactly what we're saying it means. Isn't this really a good example of why we can't be looking to legislative history? Because you're taking the position, as did the Court in Nedley, that this simply incorporates New York law. But there are other portions of the congressional record that say explicitly that it's deviating from the traditional definition of robbery and that it's looking beyond New York state law to the law of other jurisdictions. Your Honor, I want to be clear. This is not a legislative history argument. This is a canon of statutory construction argument based on its text. That when you use the word robbery, we all agree that that has a rich meaning in common law. You import it. The only time you don't import it is if Congress said, we don't want you to import it. So it is the government's obligation to show, here's why Congress meant that they didn't want this Court to import common law meaning. That never happened. They don't say how that happened. We need to import common law meaning if Congress has already provided an explicit definition. Well, that's contrary to Evans. That's not what the Supreme Court did in Evans. In Evans, the Supreme Court looks to the common law meaning of extortion even though extortion is defined one section below robbery in section 1951. That's what the Court does even when there is a definition. So, yes, I understand that makes it more complicated. You have to look at exactly how the analysis worked in Evans, but you still do this, what I'm suggesting, even with a defined term. Thank you. I would ask if we could have a transcript prepared of this war argument and the government, if you would, please be willing to pick it up. Thank you very much.